**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **CRIMINAL NO. 17-596 (PAD)** |
| **WAGNER JAVIER ROJAS-BATISTA (15),** | |
| **Defendant.** | |

**MEMORANDUM AND ORDER**

Delgado-Hernández, District Judge.

On February 21, 2018, the court denied the defendant's request to revoke the U.S. Magistrate Judge's order denying bail (Docket No. 187). Following are the grounds in support of the court's decision.

## I.  BACKGROUND

On November 21, 2018, defendant was charged in Counts One through Five of the Indictment with conspiracy to possess with intent to distribute controlled substances and aiding and abetting in the possession with intent to distribute heroin, cocaine base, cocaine, and marijuana (Docket No. 3), all in violation of 21 U.S.C. §§ 841(a)(1), 846, 860 and 18 U.S.C. § 2, respectively. Id. The object of the conspiracy was to distribute controlled substances at the San Fernando Public Housing Project in Puerto Rico. Id.

On January 12, 2018, U.S. Magistrate Judge Camille L. Vélez-Rivé held a detention hearing (Docket No. 87).[1] Defendant argued in favor of bail, which the government opposed. Id.[2]

---

[1] Defendant waived reading of the Indictment and entered a plea of not guilty (Docket No. 85).

[2] In the process of preparing this Memorandum and Order, the court listened to the recording of the hearing held before the Magistrate Judge. With limited exceptions and contrary to U.S. District Judges, Magistrate Judges do not have a Court Reporter present during the numerous proceedings held before them. Therefore, unless a transcript is requested following the applicable

After hearing arguments, the Magistrate Judge ordered defendant detained without bail. <u>Id.</u> On February 14, 2018, defendant requested a *de novo* hearing before the undersigned (Docket No. 159). That same date, a *de novo* hearing was set for February 21, 2018 (Docket No. 160). The hearing was held as scheduled (Docket No. 187). At the conclusion of the hearing, the court ordered defendant detained without bail pending trial. <u>Id.</u>

## II. <u>STANDARD OF REVIEW</u>

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3156, permits detention of a defendant pending trial if no condition or combination of conditions will reasonably assure the appearance of the person as required or the safety of any other person and the community. 18 U.S.C. §§ 3142(b) and (e). The government must establish risk of flight by a preponderance of the evidence; and/or dangerousness by clear and convincing evidence. <u>United States</u> v. <u>Mercedes</u>, 254 F.3d 433, 436 (2d Cir. 2001); <u>United States</u> v. <u>Gebro</u>, 948 F.2d 1118, 1121 (9th Cir. 1991).

Where probable cause is found to believe that a defendant has committed a crime listed or in the circumstances set forth in 18 U.S.C. § 3142(e), a rebuttable presumption arises that no conditions or combination of conditions exist that will reasonably assure the appearance of the defendant and the safety of the community. A grand jury indictment on a covered offense is enough to demonstrate probable cause for purposes of triggering the presumption. <u>United States</u> v. <u>Vargas</u>, 804 F.2d 157, 163 (1st Cir. 1986); <u>United States</u> v. <u>Holland</u>, 922 F.Supp.2d 70, 71 (D.D.C. 2013).

Once triggered, the presumption imposes on the defendant a burden of production. <u>United States</u> v. <u>O'Brien</u>, 895 F.2d 810, 814-815 (1st Cir. 1990). The burden is not heavy. <u>United States</u> v. <u>Stone</u>, 608 F.3d 939, 946 (6th Cir. 2010). It is satisfied introducing at least some evidence

---

rules and regulations, no transcript is prepared or available for those proceedings. The content of the hearing, however, is always recorded using a Digital Court Recording "DCR" program. District Judges have immediate access to DCR audio files, and may listen to the audio files when reviewing a determination made by a Magistrate Judge.

contrary to the facts presumed. Id. Rebuttal evidence does not destroy the presumption, which does not disappear, maintaining evidentiary weight. United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); O'Brien, 895 F.2d at 814-815.

The government retains the burden of persuasion throughout, in both presumption and non-presumption cases. Stone, 608 F.3d at 946; Bess, 678 F.Supp.929 at 932; United States v. Bess, 678 F.Supp. 929, 932 (D.D.C. 1988). To determine if it has met that burden, the court must consider: (1) the presumption (if applicable); (2) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of Section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device; (3) the weight of the evidence; (4) the history and characteristics of the defendant; and (5) the danger posed to the community by defendant's release. 18 U.S.C. § 3142(g); United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985). Review of a magistrate judge's release order is de novo. United States v. Tortora, 922 F.2d 880, 883 n.4 (1st Cir. 1990). The court must state in writing the reasons for the action taken. United States v. Moss, 887 F.2d 333, 338 (1st Cir. 1989); O'Brien, 895 F.2d at 813.

## III.  DISCUSSION

### A. Presumption

The presumption applies in this case. Offenses triggering the presumption include those carrying a maximum term of imprisonment of 10 years or more under the Controlled Substances Act, 21 U.S.C. § 801 et seq.; the Controlled Substances Import and Export Act, 21 U.S.C. § 951 et seq.; and the Marine Drug Law Enforcement Act, 46 U.S.C. App. 1901 et seq. See, Section 3142(f)(1)(C). Defendant has been charged with a violation of 18 U.S.C. §§ 841(a)(1), 846 and 860 by conspiring to possess with intent to distribute heroin, cocaine base, cocaine, and marijuana,

and is facing between 10 years and life imprisonment. <u>See</u>, Transcript of *De Novo* Hearing ("Transcript") at p. 4.[3] Because the conspiracy occurred in a protected location, the maximum sentence would be doubled, so defendant is facing two life sentences. <u>Id.</u> For discussion purposes, the court will assume that the presumption has been rebutted and by extension, that it retains evidentiary weight to be evaluated along with the criteria set forth in 18 U.S.C. § 3142(g).

## B. Detention Factors

### 1. <u>Nature and Circumstances of Offenses</u>

The nature and circumstances of the offenses favor detention. As previously explained, defendant is charged with 31 other individuals with conspiracy to possess with intent to distribute controlled substances, and aiding and abetting in the possession with intent to distribute controlled substances. These offenses occurred, in part, within protected locations including a public housing project, public school and a playground (Docket No. 3). As proffered by the government, the defendant was the owner of the "krippy" marijuana drug point (Transcript at p. 7).[4] And although he was not charged in Count Six of the Indictment with firearms, the government proffered that there is evidence in this case that defendant possessed firearms, including photos and videos where he was observed with marijuana and firearms. <u>Id.</u> at p. 6. As a drug point owner, defendant also *sold* "krippy" marijuana. <u>Id.</u> at pp. 25, 29. The distribution of "krippy" was not limited to his drug point, as he would also provide the marijuana to other individuals in order for them to sell it on his behalf. <u>Id.</u> For these violations, defendant is facing a minimum of 10 years and up to life

---

[3] District Judges have Court Reporters as part of their staff when presiding over the different proceedings held before them. Among other responsibilities listed in 28 U.S.C. § 753, reporters are responsible for promptly transcribing, when requested, the original record of all proceedings held before the judge and prepare and file a certified transcript of the same. The transcript is available, following applicable rules and regulations, to parties who have arranged payment. And it is also available at the request of a judge, at no charge to the court. District Judges have access to the rough drafts of the transcripts before a formal request is made by any interested party, or the transcript is filed for the record in the court.

[4] The government proffered that "krippy" marijuana refers to the quality of the marijuana; "krippy" being the highest grade, much greater than the regular street level marijuana, and as such, more expensive. Transcript at p. 7.

imprisonment.  In all, the offenses charged, the statutory sentencing exposure, and their underlying circumstances, favor detention.[5]

### 2.  Weight of Evidence

The evidence against defendant is strong.  The government pointed to at least three (3) witnesses who identified the defendant as a member of the conspiracy, and as a "krippy" marijuana drug-point owner.  Id. at pp. 6-7.  Additionally, witnesses identified defendant as a drug seller at times where he was selling his own product, or, if he was not able to sell the "krippy" would provide it to other individuals for them to sell the drug on his behalf.  Id. at p. 7.  Likewise, the government has evidence that as part of his career as a rapper, defendant used armed escorts and enforcers of the drug-trafficking organization to escort him.  Id. at 8.  Defendant appears in (i) a music video in possession of the government, seated in front of a table with marijuana, which law enforcers identified as krippy;[6] (ii) a photo with some masked individuals carrying firearms and rifles; and (iii) photos of the defendant carrying firearms, one of which had an extended magazine. Thus, the weight of evidence favors detention.

### 3.  History and Characteristics of the Defendant

Defendant is 27 years of age (Pretrial Services Report at p. 1).  He was born in Nagua, Dominican Republic.  He has been a U.S. permanent resident since he was 4 years old.  Id. at p. 2. Because he is not a United States citizen, a conviction on any count of this Indictment will subject him to deportation proceedings.  Id. at p. 12.[7]  He informed of a sister and two other paternal siblings, both residents of the continental U.S.  Id.  No foreign travels, however, were reported.

---

[5] For present purposes, the court is entitled to rely on maximum statutory terms of imprisonment.  Moss, 887 F.2d at 336.

[6] At the hearing, defendant's counsel questioned the weight of the music video in the bail determination by stating that he did not know if it was "truthful evidence" or if it was "just a persona that … [defendant] adopted for the video," as rappers do (Transcript at p. 5).  In light of the proffer of the evidence in possession of the government, the court is not persuaded by defendant's argument.
[7] By itself, this fact does not mean that defendant is a "risk of flight."  See, United States v. Stepanyan, 2015 WL 4498572, *4

Defendant has resided in San Fernando Public Housing Project since he was 4.  Id.  He sustains a non-cohabitant relationship with a resident of Villa España Public Housing Project, but no children have been procreated from this union.  Id. at p. 2.  He graduated from high school in San Juan and attended the Universidad Central de Bayamón to pursue a physical education program.  But he never completed those studies.  Id.  He does not know English.  Id.  Although he has no prior convictions or contact with the criminal justice system, he faces up to life imprisonment, which provides a motive to flee.  See, United States v. Valentín-Cintrón, 656 F.Supp.2d 292, 296 (D.P.R. 2009)(identifying potential ten-year sentence in risk-of-flight analysis).  Defendant's history and characteristics favor detention.

   4.  The Danger Posed to the Community by Defendant's Release

Defendant contends that (i) he has no prior convictions; (ii) is a lifelong resident of his community; (iii) he is a permanent resident of the United States and has not traveled outside of the United States; (iv) has some college education that he can continue if granted bail; (v) has a gainful employment as a rapper; and (vi) has a place where he could live outside the San Fernando project housing (Docket No. 159 and Transcript at pp. 2-3, 15, 19).  Even so, the congressional definition of the term "danger" encompasses harm to society caused by drug trafficking.  See, United States v. León, 766 F.2d 77, 81 (2d Cir. 1985)(so recognizing).  And the evidence proffered suggests that as the owner of the "krippy" marijuana drug point, defendant is a trusted person in the drug trafficking organization.  If released, he could have access to drug trafficking activities that pose a

---

(N.D.C. July 23, 2015)(so concluding while noting that said conclusion would categorically bar defendants facing removal from the possibility of bail). But see, United States v. Neves, 11 Fed.Appx.6, *8 (1st Cir. May 31, 2001)(concluding that the evidence supported the district court's finding that a defendant with a lengthy criminal record in the state court had a strong incentive to flee to avoid the near-certainty of a prison sentence followed by deportation); United States v. Xulam, 84 F.3d 441 (D.C. Cir. 1996)(evidence that the defendant is subject to deportation may be accorded less weight, where defendant faced persecution in his native country and did not want to return there; was a first-time offender accused of the nonviolent offense of falsifying information on a passport; and had strong community ties and respected members of that community willing to supervise his release).

special risk of danger to the community.  See, United States v. Rivera-Nieves, 265 F.Supp.3d 173,

178 (D.P.R. 2017)(so noting while denying bail)(citing United States v. Kay, 2008 WL 4449504 at

*3 (N.D. Texas Oct. 1, 2008)(denying bail to a defendant found with 100 kilograms of cocaine

with an approximate street value of $2 Million in part because evidence indicated that he was a

trusted member of the conspiracy, with conspiracy connections available to him)).  In all, the record

supports a finding that defendant is a danger to the community.

Similarly, the government proffered that defendant participated in a meeting at the San

Fernando Public Housing Project to threaten and intimidate witnesses into not appearing in court

to testify against the leader of the drug trafficking organization.  See, Transcript at pp. 12-14.[8]  The

legislative history of the Bail Reform Act repeatedly emphasizes that defendants who have

threatened witnesses pose a significant danger to the community.  See, S. Rep. No. 225, 98th Cong.,

1st Sess. At 7, 12, 15, 21, reprinted in 1984 U.S. Code Cong. & Adm. News at 10, 15, 18, 24, 25

(Supp. 9a); see also, United States v. Muñiz-Alvarez, 2015 WL 8770039, *5 (so noting while

denying bail); United States v. LaFontaine, 210 F.3d 125, 132 (2nd Cir. 2000)(witness tampering

supported detention or revocation of bail where the government proffered in bail revocation

hearing that defendant had intimidated some individuals related to case); United States v. Wind,

527 F.2d 672, 675 (6th Cir. 1975)(court may consider evidence that the defendant has threatened

witnesses and is a danger to the community in determining whether he should be released on bail).

---

[8] In particular, the government referred to a shooting at the Vista Hermosa Public Housing Project (a known enemy of the San Fernando gang indicted here) involving Yamil Hernández-García a/k/a "Gongi" and other members of the conspiracy.  As a result, one person was killed and another person was injured in front of a seventeen (17) year old minor.  The minor was so close to the shooting that blood spattered onto him.  Gongi was charged locally for this crime.  While he was at a Puerto Rico detention facility, a meeting was arranged where a witness and the parent of the minor were taken to San Fernando.  In San Fernando, these two individuals were met by at least fifteen (15) masked co-conspirators, most of whom were armed.  On the other side of the line was Gongi, who was calling from jail.  The individuals were offered money or free-travel to the mainland, in order for them not to testify in the proceedings against Gongi.  Those efforts were successful, as the witnesses did not testify at trial and the murder and firearms charges were dismissed.

# IV.    **CONCLUSION**

Having carefully considered all the evidence as well as the available range of release conditions, the court concludes that the government has shown, by preponderance of the evidence, that no condition or combination of conditions will reasonably ensure defendant's appearance in court; and by clear and convincing evidence, that no condition or combination of conditions will assure the safety of the community if defendant is released.  The nature and circumstances of the offenses charged, including potential penalty; the weight of the evidence; and danger to the community outbalance other elements in defendant's personal and history and characteristics arguably supporting release.  The evidentiary weight of the rebutted presumption (assuming it was rebutted), lends added support for this conclusion.   In consequence, the defendant shall remain detained without bail pending trial.

**SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of May, 2018.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge